CONCERNED CITIZENS OF VICKSBURG and Rev. Eddie L. McBride, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Murry SILLS, Mayor of Vicksburg, et al., Defendants-Appellees.

No. 75–4450.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1978.

---

**3.** *But see* the dissents in these two cases.

Frank R. Parker, Lawyers' Committee for Civil Rights Under Law, Jackson, Miss., William E. Caldwell, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., for plaintiffs-appellants.

Ed Noble, Jr., Asst. Atty. Gen., State of Miss., A. F. Summer, Atty. Gen., Jackson, Miss., John E. Ellis, Dist. Atty., George N. Chaney, Warren County Pros. Atty., Vicksburg, Miss., for defendants-appellees.

Before COLEMAN, SIMPSON and TJOFLAT, Circuit Judges.

SIMPSON, Circuit Judge:

Concerned Citizens of Vicksburg, an unincorporated association, filed suit against various officials of the city of Vicksburg attacking the validity of Mississippi's anti-boycott statutes and seeking declaratory and injunctive relief. A three-

judge district court[1] dismissed the suit on the ground that prosecutions under the challenged statutes pending against six of the 49 plaintiffs required federal abstention. Because the six prosecutions have been terminated during the pendency of this appeal, we vacate the judgment of the district court and remand for a determination of whether the requirements for federal jurisdiction are present.

In March 1972, plaintiffs below, a group of black citizens of Vicksburg, Mississippi, organized to make various demands upon certain merchants and city officials relating to alleged discriminatory employment practices, public and private. Later that month, plaintiffs began picketing some business establishments in Vicksburg and urging, by word of mouth and through leaflets, that the citizens of Vicksburg boycott those establishments until plaintiffs' demands were met. On May 2, 13, 14, and 21, 1972, all 49 plaintiffs were arrested, some more than once, on the basis of warrants alleging their complicity in a conspiracy unlawfully to bring about a boycott of merchants and businesses. Some of the arrests took place while the arrestees were engaged in picketing to protest discrimination allegedly practiced by Vicksburg merchants. Bond was set at $5,000 for each person arrested except for juveniles, who were released without charges. Plaintiffs, through state habeas corpus proceedings, succeeded in having their bonds reduced to $1,000 for those arrestees over sixty years of age and to $1,500 for all others. Property bonds were posted and plaintiffs were released.

As a result of these arrests, plaintiffs filed two cases in federal district court, only one of which is the subject of this appeal.

On May 25, 1972, plaintiffs filed a petition seeking to compel transfer of the state charges against them to the district court pursuant to 28 U.S.C. § 1443. The district court denied relief and was affirmed by this Court and by the Supreme Court. *Johnson v. Mississippi,* 488 F.2d 284, *reh. en banc denied,* 491 F.2d 94 (5th Cir. 1974), *aff'd,* 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975). Hours earlier, on May 24, 1972, plaintiffs had filed their complaint in the instant case, seeking a declaratory judgment that the Mississippi anti-boycott statutes on which their arrests were based were unconstitutional, and injunctive relief against further enforcement of those statutes.

In March 1973, the Warren County grand jury was presented with the cases of the 49 plaintiffs. The grand jury returned indictments against two of the plaintiffs for violation of Miss.Code Ann. § 97–23–83 (1972), and against four others for violation of Miss.Code Ann. § 97–23–85 (1972), but refused to indict the remaining plaintiffs.

On September 25, 1975, the three-judge district court in this case granted defendants' motion to dismiss on the following ground:

> No indictments were returned against 43 of the arrested plaintiffs in the instant case, but criminal charges are presently pending against 6 plaintiffs. . . .
> The Court is of the opinion that 28 U.S.C. § 2283, as interpreted in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny prohibits this Court from retaining jurisdiction in light of the fact that criminal prosecutions are pending under the attacked statute against 6 of the plaintiffs.[2]

1. The three-judge court was designated by the Chief Judge of the Fifth Circuit by an order dated February 6, 1974, pursuant to 28 U.S.C. §§ 2281 and 2284 (1970). This Court, rather than the Supreme Court, has direct appellate jurisdiction because the district court's order in this case is not one which "rests upon resolution of the merits of the constitutional claim presented below". *MTM, Inc. v. Baxley,* 420 U.S. 799, 804, 95 S.Ct. 1278, 1281, 43 L.Ed.2d 636 (1975) (construing 28 U.S.C. § 1253). In 1976, Congress repealed 28 U.S.C. §§ 2281 and

2282 and significantly narrowed the range of cases for which three-judge district courts are required by revising 28 U.S.C. § 2284. Pub.L. 94–381, §§ 1–3, Aug. 12, 1976, 90 Stat. 1119. Because of this amendment, a three-judge court will clearly not be required on remand.

2. The court based its decision on *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), and distinguished *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

Final judgment was entered by a single district court judge on October 29, 1975, and plaintiffs timely filed their notice of appeal. In their brief, plaintiffs, as appellants, note that "[t]his appeal is perfected on behalf of only the forty-three not-indicted plaintiffs against whom no state proceedings of any kind are pending". Brief for Appellants at 8.

At oral argument, the Assistant Attorney General for the State of Mississippi, representing the defendants, informed this Court that in November 1975, within one month of the district court's dismissal, the Vicksburg district attorney terminated the prosecutions of the six indicted plaintiffs by filing a *nolle prosequi.* The Attorney General's Office did not learn of this action until the day prior to oral argument, October 18, 1977.[3]

▇ The briefs in this case addressed the question of whether *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), precluded the district court from retaining jurisdiction over the 43 unindicted plaintiffs while state prosecutions based on the challenged statutes were pending against six other plaintiffs. Our consideration of this issue is foreclosed, however, by the fact that the prosecutions of the six plaintiffs were terminated during the pendency of this appeal. Because the judicial power conferred by Article III of the Constitution depends upon the existence of "Cases" or "Controversies", federal courts lack authority "to decide moot questions or abstract propositions" or issues "that cannot affect the rights of litigants in the case before them". *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). *See also Shupack v. Groh,* 498 F.2d 675 (5th Cir. 1974); *Armendariz v. Hershey,* 413 F.2d 1006 (5th Cir. 1969). Furthermore, "an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated". *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). Our jurisdiction to decide what effect the six pending prosecutions should have on the 43 unindicted plaintiffs in this case was terminated when those six prosecutions were terminated. Any decision on the merits of that question at this point could be no more than "an opinion advising what the law would be upon a hypothetical state of facts", and as such is strictly forbidden by Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).[4]

▇ Because the factual basis for the district court's holding was eliminated within days after final judgment was entered, we conclude that the judgment should be vacated and the case remanded for reconsideration in light of the facts as they now stand.

▇ It is well established that an appellate court "is obligated to take notice of changes in fact or law occurring during the pendency of a case on appeal which would make a lower court's decision, though perhaps correct at the time of its entry, operate to deny litigants substantial justice". *Hawkes v. I.R.S.,* 467 F.2d 787, 793 (6th Cir. 1972).[5] In such cases, "where circumstanc-

---

**3.** The prosecutions of the six indicted plaintiffs were held in abeyance pending the outcome of the removal case, *Johnson v. Mississippi, supra,* which was decided by the Supreme Court on May 12, 1975. Brief for Appellees at 3.

**4.** We are thus precluded from exploring the "derivative preclusion" morass described in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928–29, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975), *Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975), and *Allee v. Medrano,* 416 U.S. 802, 831, 94 S.Ct. 2191, 2208, 40 L.Ed.2d 566 (1974) (Burger, C. J., concurring and dissenting). For a discus-

sion of the arguments for and against a doctrine under which parties in state proceedings may derivatively preclude nonparties from pursuing their federal constitutional claims in federal court see *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1314–17 (1977). Cf. *Gajon Bar & Grill, Inc. v. Kelly,* 508 F.2d 1317, 1323 (2d Cir. 1974) (Kaufman, C. J., concurring); *Citizens for a Better Environment, Inc. v. Nassau County,* 488 F.2d 1353, 1360–61 (2d Cir. 1973).

**5.** "We have frequently held that in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under

es have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances". *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208 (2d Cir. 1972). Cf. *McLeod v. General Electric Co.,* 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967); *Caldwell v. H.U.D.,* 522 F.2d 4, 6 (4th Cir. 1975).

 We remand this case not for a reconsideration of the *Younger* problem, but rather so that the district court may determine whether the predicate for federal jurisdiction—"the *continuing* existence of a live and acute controversy"—is present. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). The district court cited only one basis for abstention based on *Younger*—"the fact that criminal prosecutions are pending under the attacked statute against 6 of the plaintiffs". Termination of the six prosecutions eliminated the *Younger* problem in this case, for the policies on which the *Younger* doctrine is premised "have little force in the absence of a pending state proceeding". *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972). As Mr. Justice Rehnquist explained in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975):

> review but to make such disposition of the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered". *Patterson v. Alabama,* 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082 (1935). Cf. the cases collected in *State of Washington v. United States,* 214 F.2d 33, 47 n.14 (9th Cir. 1954), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679. The Circuit Courts have applied this principle in a wide variety of circumstances. *See, e. g., Korn v. Franchard Corp.,* 456 F.2d 1206, 1208 (2d Cir. 1972) (district court's withdrawal of class certification based in part on conduct of plaintiff's attorney who had withdrawn while appeal was pending); *DeBremaecker v. Short,* 433 F.2d 733 (5th Cir. 1970) (ordinance regulating handbilling passed by city council one day before oral argument in appeal from district court's denial of preliminary injunction to prohibit police from harassing appellants while distributing handbills);

The principle underlying *Younger* and *Samuels [v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)] is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in *Steffel,* a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction.[6]

 The district court, on the basis of a supplemented record, must now determine whether the requirements for federal jurisdiction are present in this case. When this case was filed in 1972, plaintiffs were involved in a boycott of certain Vicksburg merchants and wished to encourage others to join; moreover, they had been arrested on criminal charges arising out of this peaceful activity and faced eventual prosecution. After the threat of immediate prosecution for past conduct was eliminated in March 1973 when the Warren County grand jury no-billed 43 of the plaintiffs, the chief of the Vicksburg Police testified, in a deposition made part of the record in this case, that the plaintiffs would be arrested and prosecuted under Mississippi's anti-boycott

> *Michigan Surety Co. v. Service Machinery Corp.,* 277 F.2d 531 (5th Cir. 1960) (state court judgment on which diversity claim was based reversed while federal appeal was pending); *Latimer v. Cranor,* 205 F.2d 568 (9th Cir. 1953) (after district court dismissed federal habeas corpus petition on ground that state prisoner was still serving a valid pre-existing sentence, state court held that pre-existing sentence had been fully served).

**6.** The *Younger* doctrine, of course, is not limited to "state criminal proceedings". The relevant inquiry is not confined to the type of state action sought to be enjoined and must include consideration of whether federal intervention will adversely affect the state interests that *Younger* sought to protect. *Juidice v. Vail,* 430 U.S. 327, 333–34, 97 S.Ct. 1211, 1216–17, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975).

statutes if they repeated their earlier activity. R. 203–4. As of 1973, the position of plaintiffs in this case was virtually indistinguishable from that of the petitioner in *Steffel v. Thompson, supra:* the threat of prosecution could not "be characterized as 'imaginary or speculative'", citing *Younger, supra,* 401 U.S. at 42, 91 S.Ct. at 749, and the prior arrests furnished "ample demonstration that [plaintiffs'] concern with arrest has not been 'chimerical'", citing *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1758–59, 6 L.Ed.2d 989 (1961). 415 U.S. at 459, 94 S.Ct. at 1215–16. Since termination of the six pending prosecutions has eliminated any potential *Younger* problem, plaintiffs are entitled to seek redress in a federal forum lest they be placed "between the Scylla of intentionally flouting state law and the Charybdis of foregoing what [they believe] to be constitutionally protected activity in order to avoid being enmeshed in [another] criminal proceeding". *Wooley v. Maynard,* 430 U.S. 705, 710, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977), quoting *Steffel, supra,* 415 U.S. at 462, 94 S.Ct. at 1217.

The task of the district court on remand, then, will be to determine whether plaintiffs still desire to engage in any arguably protected activity which they likely would forego in the absence of the relief they seek. The test is set out in *Steffel:*

> [I]t will be for the District Court on remand to determine if subsequent events have so altered [plaintiffs'] desire to engage in [specified activity] that it can no longer be said that this case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment".

415 U.S. at 460, 94 S.Ct. at 1216. Of course, if plaintiffs still seek injunctive, in addition to declaratory relief, the district court will have to determine the appropriateness of both forms of relief.

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

**VACATED and REMANDED.**